UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| W THOMAS ANGERS | CASE NO.  6:07-CV-00949 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| LAFAYETTE ET AL | MAGISTRATE JUDGE DAVID J. AYO |

### REPORT AND RECOMMENDATION

Before this Court is DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS filed by Defendants Lafayette Consolidated Government (LCG) and the Roicy Duhon Animal Shelter (RDAS).  (Rec. Doc. 22).  Plaintiff W. Thomas Angers, individually and on behalf of his minor son, Austen John Angers, filed an opposition (Rec. Doc. 32) to which LCG replied (Rec. Doc. 34).  For the reasons below, the undersigned recommends that LCG's motion be DENIED.

### Factual and Procedural History

To say that this case has a long and tortured procedural history is an understatement.  The briefing on the instant motion confirms it.

On June 5, 2007, W. Thomas Angers, an attorney, filed suit individually and on behalf of his minor son Austen John Angers against LCG and RDAS.  (Rec. Doc. 1).  Angers alleges that he and his son were the owners of "one wonderful and loving cat named Mimi," who, on June 4, 2006, turned up missing.  (*Id*. at ¶¶ 5-6).  After an unsuccessful search, Angers went to RDAS on June 5, 2006 to see the cats that had been captured in recent days.  (*Id*. at ¶ 8).  Angers understood that Mimi was not at RDAS but completed a card describing Mimi and her last known whereabouts.  (*Id*.

1

at ¶¶ 10-12). After returning home, Angers "saw a cat looking similar to Mimi that had first been detected on the prior Sunday, enlisting the help of a friend, who knew Mimi well, to come see if the similar-looking cat may have been his cat, Mimi." (*Id.* at ¶ 13). However, this cat did not respond. (*Id.* at ¶ 14).

On June 6, 2006, Angers returned to RDAS for a trap to attempt to capture the similar-looking cat. The trap was set and successfully captured a cat, which was confirmed as not being Mimi. (*Id.* at ¶ 15). After releasing this cat, a neighbor informed Angers that a cat fitting Mimi's description had been trapped and turned over to RDAS the previous week. (*Id.* at ¶ 17-18).

On June 7, 2006, Angers spoke to an unidentified woman who confirmed that a cat had been captured in the vicinity of Angers' residence. (*Id.* at ¶ 19). This person informed Angers that a cat—which Angers alleges was Mimi—had been euthanized the day before. (*Id.* at ¶ 20). Angers inquired as to why he had not been allowed to see the feral cats at RDAS but was told that the area was a "bad, ugly and offensive scene. . . ." (*Id.* at ¶ 21). The complaint contends that Mimi had already been "gassed to death" when Angers had gotten the trap such that the unidentified RDAS employee had made intentional misrepresentations that constituted a "clear, intentional cover-up of misconduct. . . ." (*Id.* at ¶¶ 22-27). Angers alleges that an unidentified Lafayette Police Department officer had told him that Mimi had been euthanized the day before. (*Id.* at ¶ 28). The complaint suggests a broad scope of intentional misconduct and a cover-up, including alteration and destruction of public records regarding the actual date of euthanasia (*Id.* at ¶ 30), the termination of one or more employees for

2

misconduct relating to the incident (*Id.* at ¶ 31), the exclusion of the public from viewing the feral cat population due to the inhumane conditions (*Id.* at ¶ 33), and the "insulting and offensive position" taken by an LCG risk manager that Mimi had been euthanized (*Id.* at ¶ 36). The aforementioned conduct is alleged to constitute wrongful conversion, misappropriation, violation of duties of bailment, violation of the Civil Rights Act, and breach of the duty of care (*Id.* at ¶¶ 41-46) for which every imaginable form of damages is sought (*Id.* at ¶ 47).

LCG and RDAS initially responded with a Motion to Dismiss on June 28, 2007. (Rec. Doc. 5). This motion requested a stay or abstention under Rule 12(b)(1) and dismissal under Rule 12(b)(6) based on RDAS as being a juridical entity not capable of being sued and the failure to state a claim under 42 U.S.C. § 1983. After briefing, Judge Rebecca Doherty, in a Memorandum Ruling dated October 3, 2007, concluded that RDAS was not a juridical entity capable of being sued and granted dismissal to that extent. (Rec. Doc. 20 at 6-7). She further found that a stay of the matter was warranted pending resolution of the parallel state court suit. (Id. at 7). The case remained stayed until LCG and RDAS moved to lift the stay on May 14, 2024. (Rec. Doc. 21). The instant motion was filed simultaneously. (Rec. Doc. 22). The undersigned lifted the stay by electronic minute entry. (Rec. Doc. 24).

The disposition of the state court suit which served as the basis for this Court's stay in 2007 is the basis for the instant motion.

3

## **Applicable Standards**

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

4

not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atl.*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl.*, 127 U.S. at 556). *See also In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir. 2008). Although "[t]he failure-to-state-a-claim inquiry typically focuses on whether the plaintiff plausibly alleges the element of a claim," a "Rule 12(b)(6) dismissal may also 'be appropriately based on a successful affirmative defense' provided that the affirmative defense 'appear[s] on the face of the complaint.'" *Am. Precision Ammunition, L.L.C. v. City of Mineral Wells*, 90 F.4th 820, 824 (5th Cir. 2024) (quoting *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022). In this situation, it must be apparent from "the plaintiff's own allegations" that a defense is fatal to the claim. *See* 5B Charles Alan Wright & Arthur R. Miller,

5

Federal Practice and Procedure § 1357 (3d ed. 2021). [T]he pleadings must 'reveal beyond doubt that the plaintiffs can prove no set of facts' that would overcome the defense or otherwise entitle them to relief." *Id.* A claim suffering from this kind of facial deficiency warrants dismissal because it has "a built-in defense and is essentially self-defeating." *Id.* (quotation omitted).

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6) a court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir. 2004). When reviewing a motion to dismiss, a district court may also consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)).

## Analysis

LCG's motion seeks dismissal under Rule 12(b)(6) on three grounds: the dismissal of Angers' state court suit as abandoned under La. Code Civ. Proc. Ann. art. 561, *res judicata* based on the dismissal of Angers' state court suit, and failure to properly state a claim of municipal liability under 42 U.S.C. § 1983.

At the outset, the undersigned emphasizes that the instant motion is brought pursuant to Rule 12(b)(6) but contained attachments such as various state court filings and an affidavit from LCG's counsel filed in the state court suit referencing a

denial of supervisory writs by the Louisiana Third Circuit Court of Appeal and Angers' failure to dismiss a state court suit after acceptance of a settlement offer. Since the motion asserted that the instant case is now barred by *res judicata*, the undersigned issued an electronic minute entry directing LCG to "supplement its Motion to Dismiss, Rec. Doc. 22, with a copy of the State Court Judgment dated March 29, 2011 and referenced in Rec. Docs. 22-4 and 22-5. . . ." (Rec. Doc. 25). Rec. Doc. 22-4 was a state court order granting Angers a suspensive appeal, and Rec. Doc. 22-5 was LCG's aforementioned state court affidavit. In response to the undersigned's request for the March 29, 2011 judgment, LCG filed a copy of a March 22, 2011 Motion for New Trial and a March 29, 2011 order denying that motion. (Rec. Doc. 26). The instant motion, as supplemented, did not contain the operative state court judgment on which a finding of *res judicata* could be based.

When the instant motion was filed, the clerk's office issued the standard Notice of Motion Setting on May 14, 2024 requiring that any opposition be filed within 21 days. (Rec. Doc. 23). Therefore, Angers' opposition was due on June 4, 2024. On August 8, 2024, Angers, who again is an attorney, filed a motion seeking leave to file an opposition despite neither the Federal Rules of Civil Procedure nor this Court's local rules requiring leave of court to file an opposition to a motion. (Rec. Doc. 27). LCG opposed this motion, noting the obvious untimeliness of the proposed opposition. (Rec. Doc. 28). In any event, the undersigned granted leave and ordered that any opposition be filed within ten days. (Rec. Doc. 28). Apparently unable to meet even that deadline, Angers sought an additional ten days (Rec. Doc. 30), which the

7

undersigned granted with the express condition that no further extensions would be granted (Rec. Doc. 31).

At last, Angers filed an opposition on September 6, 2024. (Rec. Doc. 32). Much of the opposition is impertinent and unresponsive to the grounds sought for dismissal by LCG's motion and much of it borders on nonsense. For example, the opposition states, "That judgment of abandonment should be considered an absolute nullity because Lafayette Consolidated Government cannot claim abandonment of an action that had previously been subject to a letter agreement. An action cannot terminate both by settlement and compromise by letter agreement and by abandonment." (Rec. Doc. 32 at 2). Angers is arguing in opposition to a motion seeking the dismissal of his suit in this Court that his underlying state court suit had been terminated by a letter agreement, *i.e.*, the same agreement referenced in LCG's counsel's state court affidavit attached to the instant motion but not included with the motion. For what it is worth, the absolute nullity of a judgment is a term of art under Louisiana law and would not apply under the circumstances Angers suggests. *See* LA. CODE CIV. PROC. ANN. arts. 2001-2006 (dictating procedure for annulment of a final judgment).

LCG filed a reply contending that the state court dismissal on abandonment is not a nullity due to the compromise agreement, any claim related to the compromise agreement in time-barred, Angers failed to timely amend to assert other claims, Angers' Section 1983 claims were dismissed by summary judgment, and the *ex parte* dismissal based on abandonment was proper. (Rec. Doc. 34). The much-discussed letter agreement was attached as well as nearly 90 pages of documents from the state

court record. (Rec. Doc. 34-1). The letter agreement is a May 31, 2022 letter from LCG's then-counsel summarizing the terms of the settlement of a case brought by the Humane Society against LCG under a different docket number and requiring, *inter alia*, that Angers' state court suit and this suit be dismissed, neither of which apparently happened. The attachments include multiple written reasons for judgment, motions, memoranda, and one judgment dismissing Angers' "remaining claims." (Rec. Doc. 34-6 at 2).

The unnecessary complexity and absurdity of the procedural posture of this case is made evident by the facts that Angers' state court suit was dismissed on the merits, dismissed as abandoned, *and* settled (for which no judgment of dismissal was sought or obtained based on said settlement). If Angers' state court suit was dismissed as abandoned, such dismissal gains no preclusive effect. The Fifth Circuit recognizes that when giving preclusive effect to a state court judgment, courts must apply the preclusion rules of that state. *Dotson v. Atl. Spec. Ins. Co.*, 24 F.4th 999, 1002 (5th Cir. 2022) ("Preclusion law varies from jurisdiction to jurisdiction—in some, res judicata applies only to the claims actually brought in the previous suit, whereas in others, res judicata might apply more broadly to other claims. To determine which law applies, we look to the court where the prior judgment was entered."); *In re Keaty*, 397 F.3d 264, 270 (5th Cir. 2005). Under Louisiana law, "A judgment of dismissal with prejudice shall have the effect of a final judgment of absolute dismissal after trial. A judgment of dismissal without prejudice shall not constitute a bar to another suit on the same cause of action." LA. CODE CIV. PROC. ANN. art. 1673. *See also* LA.

9

STAT. ANN. § 13:4231. Angers' state court suit was filed one before the instant case was filed. (*See* Rec. Docs. 1 (complaint), 5-2 (state court petition)). Louisiana law is clear that a dismissal on grounds of abandonment is a dismissal *without* prejudice. *Davis v. Naquin*, 375 So. 3d 968, 972 (La. App. 1 Cir. 2023); *Walker v. Archer*, 203 So. 3d 330, 334 (La. App. 4 Cir. 2016); *Felo v. Ochsner Med. Ctr.-Westbank, LLC*, 182 So. 3d 417, 423-24 (La. App. 5 Cir. 2015).

A finding that a federal court suit is barred by *res judicata* based on a *with*-prejudice dismissal via summary judgment of a state court suit arising out of the same transaction or occurrence (filed one day apart with nearly verbatim pleadings for that matter) should be a straightforward enough exercise not requiring nearly 100 pages of state court filings. Had LCG provided a judgment clearly stating that Angers' claims had been dismissed with prejudice,[1] this Court would have construed the instant motion as a motion for summary judgment pursuant to Rule 12(d). Without that operative and ostensibly dispositive state court judgment,[2] this Court is not inclined to convert LCG's motion to a motion for summary judgment and weave together nearly 100 pages of attachments from the state court record to determine whether Angers' state court suit had been dismissed with prejudice—when, again, such showing should be easy—and the issue is complicated by the dismissal as abandoned and the references to the settlement via the letter agreement. For these

---

[1] LCG attached a judgment dismissing Angers' "remaining claims" but not an earlier judgment dismissing presumably some but not all of Angers' claims.

[2] The state court judge's Written Reasons for Ruling was attached to LCG's reply and references a previous grant of summary judgment on Angers' Section 1983 claims. A judgment presumably resulted from this ruling but was not attached. *See generally Felts v. Casey*, 132 So. 3d 444, 447 (La. App. 2 Cir. 2014) ("Written reasons for judgment do not form part of the judgment and do not constitute a final judgment from which an appeal can be taken.").

reasons, the undersigned cannot conclude that Angers' suit is barred by an affirmative defense such as *res judicata* on the face of the complaint. Although dismissal under Rule 12(b)(6) sometimes may be premised upon a successful affirmative defense, that defense must appear on the face of the complaint. *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) (plaintiff's pleadings need not identify elements that relate to affirmative defense). In other words, the facts supporting the affirmative defense must be uncontroverted by the parties. *Mosley v. Bristow*, 2023 WL 6976891 at *3 (E.D. La. Oct. 23, 2023) (citing *Canidae, LLC v. Cooper*, 2022 WL 660197, at *16 (N.D. Tex. Feb. 9, 2022)). Most affirmative defenses fail when tested against Rule 12(b)(6) standards. *Id*. For this reason, this Court cannot conclude—under a Rule 12(b)(6) analysis—that Angers' suit is barred by *res judicata* but notes that Angers' suit is likely so barred. It is not in the interest of judicial economy to engage in a complete analysis of the merits of Angers' Section 1983 claims under Rule 12(b)(6) if such claims are barred by *res judicata* anyway. LCG can make such a contention in a motion for summary judgment containing the operative state court judgment unburdened by the morass of extraneous state court records and should address how/why the same state court case was dismissed with prejudice, dismissed without prejudice as abandoned, *and* settled without being dismissed.

## Conclusion

For the reasons discussed herein, this Court recommends that DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS filed by Defendants Lafayette Consolidated Government and the Roicy Duhon Animal Shelter (Rec. Doc. 22) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.

Signed in Chambers this 12th day of March, 2025.

_____
David J. Ayo
United States Magistrate Judge